Filed June 24, 1893.

---

No. 819.

## The Pennsylvania Company v. Burgett.

PLEADING. — *Complaint.* — *Unnecessary Averments.* — *Coemployes.* — *Knowledge of Appliances.*—*Master and Servant.*—In an action by an employe against his employer for injuries sustained by reason of defective appliances in the hands of others, it is not necessary to allege in the complaint that such persons were not coemployes of plaintiff; nor in such a case is it necessary to state that plaintiff could not have known of the unsafe condition of the appliances, had he exercised care in observing what was about him.

INSTRUCTIONS TO JURY.—*Employer and Employe.*—*Appliances.*—*Knowledge of Defect by Employe Previous to Injury.*—*Erroneous Instruction.* —In an action by an employe against his employer for damages sustained by reason of personal injuries caused by a defective appliance, the court instructed the jury, in part, that "the plaintiff had the right, in the absence of knowledge to the contrary, to presume that the wagon conveying the iron that injured him was in reasonable repair, and in reasonably safe condition for the use to which it was applied; and even if the plaintiff had known, three weeks or more before his injury, that said wagon was out of repair,

he had a right to presume that the defendant would use reasonable and ordinary diligence in repairing the same." The latter part of this instruction, which informed the jury that "if plaintiff had known, three weeks or more before his injury, that said wagon was out of repair," etc., was erroneous and calculated to mislead the jury, and amounted to reversible error.

EMPLOYER AND EMPLOYE.—*Respective Rights and Duties.—Presumption.—Appliances.*—It is the duty of an employer to furnish his employe with reasonably safe appliances, and the employer is chargeable with knowledge of the liability of the appliances to wear out, and it is therefore his duty to exercise reasonable supervision over them and keep them in reasonably good repair; and it is not the duty of an employe to examine appliances not in his use, but he has the right to assume that such appliances are in a safe condition, but when the employe becomes aware of the unsafe condition of an appliance, from that time he is chargeable with notice of such defect, and must use care in proportion to the danger likely to be incurred on account thereof.

Dissenting opinion by LOTZ, J.

Opinion on petition for rehearing by DAVIS, J., to which LOTZ, J., dissents.

From the Allen Superior Court.

*A. Zollars,* for appellant.
*L. M. Ninde* and *H. W. Ninde,* for appellee.

DAVIS, J.—In the court below, appellee recovered judgment in the sum of three thousand dollars, in an action for personal injuries.

The first error discussed is that the court erred in overruling appellant's demurrer to the complaint.

After the formal parts of the complaint, averring the ownership and operation of the railroad and its appurtenant shops at Fort Wayne by appellant, and the employment of the appellee in said shops as a helper, and that the appellant was using in its shops a certain four-wheeled hand wagon loaded with a ton of iron, which the defendant was then and there hauling or driving near to where the appellee was carefully and diligently engaged in the discharge of the duties of his

employment, the complaint then avers that said wagon was then and there worn out, weak, loose, out of repair and wholly unfit for the purposes for which it was being used by appellant, and that the king bolt of the wagon was loose, worn out, and the axles and wood around it were worn out and cut away from said king bolt, so that it could not hold the platform of said wagon steady or level; that the wheels, hubs, spokes, and joints of said wagon were all worn out, shrunken and so out of repair that said wagon became and was then and there dangerous and unfit to be so used, and when it was turned, or the surface over which it was so hauled would be uneven, it would swing from side to side and become likely to upset; that the appellant knew, and, for a long time before the appellee became injured, it might have known, by the exercise of reasonable diligence, of all of said defects and unsafe condition of said wagon; and yet, that, with notice of said defects and the dangerous condition of said wagon, the appellant, on the 14th of March, 1887, carelessly, and without any regard for the safety of the life or limb of appellee or its other employes, hauled and was hauling and driving said wagon, so loaded with one ton of iron, past and near to the appellee, when said wagon, on account of its said worn out, weak and dangerous condition, as aforesaid, upset with said load of iron, and then and there and thereby said wagon and iron were thrown on the appellee, and broke his leg and otherwise injured him.

It is further averred that appellee did not know that the said wagon, so negligently driven and used near to appellee, as aforesaid, was out of repair, worn out, or in any way dangerous, or that the same would upset or fall upon him and throw said iron on him as aforesaid, but he avers that he was so injured without any fault whatever on his part.

It is earnestly insisted by the learned counsel for appellant, in an able and ingenious argument, that the complaint, the substance of which we have hereinbefore set out, fails to show actionable negligence on the part of appellant, and also fails to show that appellee was without contributory negligence.

We have carefully read the complaint, in the light of the objections urged thereto, and are of the opinion that the facts alleged in the complaint constitute actionable negligence.

The absence of an averment that the servants of appellant who were using the wagon were not the coemployes of appellee does not sustain appellant's contention. If, on the contrary, it appeared that they were coemployes, we are not prepared to say, under the circumstances stated in the complaint, that such fact would render the complaint bad. The general rule is that where a servant receives an injury occasioned, in part, by the negligence of the master and in part by the negligence of a coemploye, the servant, if without fault on his part, may maintain an action against the master for such injury. *Boyce* v. *Fitzpatrick*, 80 Ind. 526; *Paulmier* v. *Erie R. R. Co.*, 34 N. J. L. 151; 2 Thompson on Neg., 981.

In view of the averments in the complaint, it was not necessary, in order to show that appellee was not guilty of contributory negligence, to state that he could not have known of the unsafe condition of said wagon, had he exercised care in observing what was about him.

It sufficiently appears, from the facts pleaded, that appellant was guilty of actionable negligence; that such negligence was the proximate cause of the injury, and the general allegation that appellee was without fault is not overthrown by the statement of any facts from which it is apparent he was guilty of negligence.

The only other error discussed is that the court erred in overruling appellant's motion for a new trial.

It is urged that the evidence fails to show negligence on the part of appellant, and affirmatively shows that whatever negligence there may have been was the negligence of appellee himself and his coemployes.

There are nearly four hundred pages of type-written testimony, and we take occasion here to state that the record is, in all respects, properly made, logically arranged, conveniently bound, thoroughly indexed and in excellent shape for examination. If the profession would, in all cases, see that the records were so well and conveniently constructed, the labor of the court would be facilitated.

We can not, within the limits of this opinion, undertake to set out all the evidence, or the substance thereof. The reading of the record discloses there is evidence tending to prove, among other things, that, at the time of the accident, the appellee was in the pursuit of his duties, following his wagon where, under the circumstances, helpers were accustomed to go, and where it was his duty to go; that in the shop where appellee was so employed, the appellant had certain shears used by its servants for the cutting of rods and plates of iron, to which shears the iron was transported from the streets through the shops, and from the shears to the forges; that the shears set a short distance north of a large door in the south side of the shop, through which these loads of material, on trucks or hand wagons, passsd to the shears and out again; that the appellee's duty was to aid in transporting this iron, and, at the time he was injured, Grotham, the blacksmith he was helping, and appellee had hauled a load of iron to the shears and had it cut up and dropped on the opposite or west side of the shears, and that Grotham had taken hold of the tongue of his wagon and

turned it around and was proceeding back again towards the door to go out of the shop; that the appellee's duties required him to assist in propelling the wagon when loaded, and to follow it out as it was taken away; that the employe, Dryer, who operated the shears, as soon as Grotham's load was cut up, proceeded to transport a wagon loaded with iron, containing about seven hundred pounds of rods, through said door to the shears, and had proceeded to about opposite the shears and then turned his wagon sharply to the left, bringing the front end of it directly towards the west, while the back end of it was swung around from south to east; that these rods extended over the back end of said truck some six to eight feet, and, as the back ends of the rods swung around, they were brought between Grotham's truck, as it was passing southward, and the appellee standing close upon it, and thus prevented him from following his truck to the door.

The Dryer truck was so worn out, and the king bolt and the axle and the wood attached to the axle around the king bolt were so worn and loose that it was insufficient to preserve the bolster and the platform in a level condition, and as this loaded truck was turned in the way described, the front axle was so changed in its relation to the bolster over it that it ceased to hold the bolster level or steady, and at that moment, on account of its unsafe and defective condition, the wagon upset, bringing the back end of the rods thereon against the appellee and causing the injuries sued for; that before the accident, appellant had notice of the defective condition of the wagon, and that appellee had no knowledge of its defective condition, and was without fault.

The evidence is, in many important particulars, contradictory, but, without further consideration of this branch of the case, it is sufficient to say, in conclusion

thereon, that we are of the opinion that there is evidence in the record tending to support every material point in the case.

The only other question to which our attention has been invited relates to instructions given to the jury by the court on the trial.

Complaint is made of the first, second, fourth, sixth, seventh, and eighth instructions given by the court on his own motion, but as the giving of these instructions is not assigned as cause for new trial in the motion therefor, we will not specially consider any of them.

The court gave to the jury, in all, thirty-two instructions, of which fourteen were given at the request of appellant.

The instructions given were full and comprehensive, and, when considered as an entirety, correctly state the law applicable to the case, unless there should be found reversible error in one or more of them to which special reference is hereinafter made.

The seventh instruction, given at request of appellee, and of which complaint is made, is as follows:

"The plaintiff had a right, in the absence of knowledge to the contrary, to presume that the wagon conveying the iron that injured him was in reasonable repair, and in reasonably safe condition for the use to which it was applied, and even if the plaintiff had known, three weeks or more before his injury, that said wagon was out of repair, he had a right to presume that the defendant would use reasonable and ordinary diligence in repairing the same."

In discussing the objections to this instruction, counsel for appellant, among other things, say:

"The plaintiff had no right to presume that the wagon was in a safe condition. He had a right to assume, simply, that the company had exercised reasonable care

to have it in a safe condition.    It was his duty also to
exercise reasonable care to ascertain its condition, before
putting himself in a position where he might be injured
by it, and if he had knowledge of its condition, three
weeks or more before his injury, it was clearly his duty
to inform the company of that fact, and until he did so,
it was clearly his duty to exercise care not to be injured
by it.

"If he neglected his duty in that regard, and was in-
jured, he has no one to blame but himself.    Knowing
the wagon to be out of repair, he had no right to pre-
sume that it had been fixed, until he or some one else,
with his knowledge, had notified the company of its con-
dition."

Counsel for appellee, in the consideration of this ques-
tion, say:

"And that is, whether or not an employe, as to appli-
ances with which he has nothing to do, and with which
his duties bring him into no connection, is bound to in-
spect and look out for defects therein, or whether he may
not rely upon the obligation of his employer to keep
them in proper repair and safe condition for its use.
The appellant claims that it was the appellee's duty to
exercise reasonable care to ascertain the condition of the
wagon before putting himself in a condition where he
might be injured by it, and that, if he had some knowl-
edge of its defects three weeks previously, he had no
right to assume that the defects were remedied.    With-
out discussing this question at length in the light of the
authorities, we will again refer to two of our briefs just
filed in Supreme Court, in which these questions are
discussed as fully and carefully as we were, or are yet,
able to do, and ask that the discussion of this question
in said briefs be examined and treated as if copied in full
herein."

The briefs, in the cases referred to by the learned and experienced counsel for appellee, are not on file in the office of the clerk, and, therefore, we proceed to the determination of the question without the citation of authority by counsel for either of the parties.

The general rule is that the employe may "repose confidence in the prudence and caution of the employer and rest on the presumption that he has also discharged his duty by supplying" safe machinery and appliances. *Bradbury* v. *Goodwin,* 108 Ind. 286; *Louisville, etc., R. W. Co.* v. *Buck, Admr.,* 116 Ind. 566 (573).

"It is not only the duty of the master to exercise reasonable care to furnish his employe with a safe place to work and safe machinery, but it is his further duty to exercise a reasonable supervision over it, and to exercise ordinary care in keeping it safe for the use of his servant." *Pennsylvania Co.* v. *Brush, Admx.,* 130 Ind. 347; *Indiana Car Co.* v. *Parker,* 100 Ind. 181.

Under the authorities, unquestionably the duty which appellant owed appellee required that the wagon and appliances used by other employes where he was engaged in the line of his duty should be reasonably safe, and ordinary care on part of appellant required that appellant should take notice of the liability of the wagon to wear out by use, and it was therefore the further duty of appellant to exercise reasonable supervision over the wagon and to keep the same in reasonably good repair. Moreover, it was not the duty of appellee to examine the wagon, which he did not use, although by so doing he might have discovered its defective and dangerous character, and he had the right to assume that such wagon was safe and in proper repair; but when he became aware of its unsafe condition, as indicated in the instruction, from that time he was chargeable with notice of such defects, and it was his duty to exercise care in pro-

portion to the danger likely to be encountered by him on account thereof. *Pennsylvania Co.* v. *Brush, Admx., supra; Griffin* v. *Ohio, etc., R. W. Co.*, 124 Ind. 326; *Umback* v. *Lake Shore, etc., R. W. Co.*, 83 Ind. 191.

The latter part of the instruction says to the jury, in effect, that notwithstanding appellee may have known of the defective and unsafe condition of this wagon, and although the attention of appellant may not have been called thereto by appellee or any one else, and although he may not have received any information that it had been or would be repaired, yet, notwithstanding such knowledge on his part, he had the right to presume that appellant would use reasonable or ordinary care in repairing the same.

In this connection, and before proceeding farther in the consideration of the questions arising in the giving of this instruction, we desire to say that although we have not critically examined all of the instructions, we have read them in connection with the one above set out, and as hereinbefore indicated, it occurs to us that the other instructions in the case, when considered as a whole, were not unfavorable to appellant. There may be some inaccurate expressions and unnecessary statements embodied therein, but we have not noticed any other instruction which, in our opinion, was calculated to mislead the jury. Therefore, the pertinent question for our consideration is whether this instruction correctly states the law applicable to the case, and if not, whether the giving of it constitutes reversible error.

In order to properly understand the application and effect of the instruction, we briefly notice some of the controverted facts and circumstances which there was some evidence tending to support, in addition to those hereinbefore mentioned, that is to say, that appellant had no knowledge of the alleged defects; that any defects which

may have existed were known to appellee; that, while he did not use this particular wagon, his labors brought him in connection therewith; that if appellee had been looking on this occasion, he could have seen and known of the danger, and got out of the way and avoided the injury; that his proper place was at the rear end of the wagon that he had just unloaded, and that if he had been there he would have been out of danger and not got hurt; that he was told to move his wagon out of the way, which could have been easily done, and instead of doing that, he took hold of the iron on the loaded wagon, and by pulling them caused the wagon to upset and the load to fall upon him, and that if he had not taken hold of the rods or had promptly let go of them he could have got out of the way and saved himself, and that after he was injured he found no fault with the wagon, but did find fault with his coemploye who turned the wagon around, and also said that the rods had fallen upon him by reason of his having taken hold of them.

The court in other instructions said to the jury, in substance, in clear and appropriate terms, that it was the duty of appellant to use ordinary care and skill in providing its employes with safe machinery and appliances, and that it was the duty of appellant to take notice of the liability of the wagon to wear out by use, and also that it was the duty of appellant to use ordinary and reasonable care and diligence in repairing the same, and that appellee had the right to rely upon appellant discharging said duties.

Appellant's duties are fully and comprehensively set forth in the instructions given by the court to the jury, aside from the one in question. If there is error in this instruction, it is on account of the reference therein to the knowledge on the part of the appellee of the fact that the wagon was out of repair.

Every other proposition embodied in this instruction is embraced in the other instructions.

It should be borne in mind that the relation occupied by appellee to appellant imposed a reciprocal duty on him, and on the discovery of the fact that the wagon was out of repair, as indicated in the instruction, it was his duty to notify appellant thereof and to take proper precaution to guard against danger on account of such defects.

In view of these reciprocal duties, can appellee say that, notwithstanding such knowledge of the fact that the wagon was out of repair, he had the right, under the controverted facts and circumstances in the case,—without calling attention of appellant thereto, and without taking any precautions by reason of such knowledge,—to act on the presumption, in dealing and in connection with this wagon in the discharge of his duties, that appellant had exercised the duties incumbent on it in relation to furnishing safe appliances and keeping the same in repair?

The instruction must be read, considered, and construed in the light of the evidence in the case and the other instructions given. When this is done our conclusion is that, as applicable to the facts and circumstances in this case, the instruction hereinbefore quoted was not accurate, but on the contrary was erroneous and calculated to mislead the jury. See *Mad River, etc., R. R. Co.* v. *Barber,* 5 Ohio St. 551 (565); *Umback* v. *Lake Shore, etc., R. W. Co., supra; Indianapolis, etc., R. W. Co.* v. *Watson,* 114 Ind. 20; *Rietman* v. *Stolte,* 120 Ind. 314; *Toledo, etc., R. W. Co.* v. *Eddy,* 72 Ill. 138; *Crutchfield* v. *Richmond, etc., R. R. Co.,* 78 N. C. 300; 2 Thompson Negligence, 1008, 1009, 1015.

Such knowledge on part of appellee would not necessarily defeat a recovery by him for the injuries sustained.

The Pennsylvania Company *v.* Burgett.

Under the most favorable view of the authorities, as applicable to this case, our opinion is that until appellee had notice of the alleged defects, he had the right to rely on the presumption that appellant had performed his duty in providing safe appliances, and that appellant had exercised ordinary care in keeping the same in repair, but we do not believe this presumption applied after appellee obtained actual knowledge of such defects, in the absence of any reference to whether the attention of appellant was called thereto.

Judgment reversed.

Filed March 31, 1893.

### DISSENTING OPINION.

LOTZ, J.—I do not concur in the prevailing opinion. The complaint charged negligence against the appellant in failing to keep a certain hand wagon in a reasonably safe condition, and, on account of such failure, the appellee suffered severe personal injuries.

The negligence was denied, and to this issue, and the consequences of the alleged negligent conduct, all the evidence given in the case was directed. There was a sharp controversy and some contradiction.

There was evidence tending to show that, about three weeks before the appellee sustained the injuries, he had knowledge of the unsafe condition of the wagon. The appellee did not work with the wagon, although he worked with other wagons in and around the shop, and where the wagon that produced the injury was used. In this condition of the evidence, the court gave this instruction to the jury: "The plaintiff had a right, in the absence of knowledge to the contrary, to presume that the wagon conveying the iron that injured him was in reasonable repair, and in reasonably safe condition for the uses to which it was applied, and even if the plaintiff

had known, three weeks or more before his injury, that said wagon was out of repair, he had a right to presume that the defendant would use reasonable and ordinary diligence in repairing the same.''

The giving of this instruction is the sole ground for the reversal of the cause, as shown in the majority opinion.

In my judgment, the instruction was proper, in view of the evidence adduced. The first part of the instruction is predicated upon certain general rules of law governing the duty of the master to his servant. These rules are that the master must furnish his servant with reasonably safe machinery and appliances and place to work, and exercise reasonable supervision and care to keep them safe.

The presumption is that the master discharged his full duty to his servant, but this presumption is not conclusive. It is but a probability, and yields as soon as any evidence is produced that tends to show the contrary.

The latter part of the instruction is, in principle, the same as the first. It was appellant's duty to keep the wagon in a reasonably safe condition, and the presumption is that it did so. This necessarily included putting it in reasonable repair, else it would not be reasonably safe.

The presumption of the continuity of things does not apply to transient conditions. The fact that the wagon was out of repair three weeks before, raises no presumption that it continued so to be up to the time of the injury. It might have been repaired many times in the interval.

The appellee, relying upon the prudence and caution of the appellant, and on the duty imposed on it by law, as he had a right to do, may have had his caution lulled to repose, but because of a fleeting, transient condition,

The Pennsylvania Company v. Burgett.

these salutary rules are not only overthrown but the appellee is made to suffer for the nonfeasance of the appellant, as I understand the prevailing opinion.

At most, the instruction deals only with presumptions, bare probabilities, which yield to the slightest evidence. The appellant sought to show that the wagon was at no time dangerous and unsafe, and to this end much of its voluminous evidence was directed. If its evidence was of any weight whatever, these presumptions faded away before it. The appellant ought not be permitted to assail the verdict for want of evidence, and at the same time assert that its own evidence given in the case did not overcome a bare presumption.

I think it apparent that the jury rested its verdict on the evidence, long after the stage of presumptions mentioned in the instruction had been passed.

In the light of the record of this cause, I can not readily see how the instruction could be harmful, even if erroneous.

In all other respects, I agree with the majority opinion.

Filed March 31, 1893.

## ON PETITION FOR A REHEARING.

DAVIS, J.—The learned counsel for appellee have filed an able and earnest petition and brief for rehearing in this case, which we have carefully examined and considered.

There is evidence in the record tending to prove that prior to the accident appellee, in the discharge of his duties, had been accustomed to assist other employes in the operation of the hand wagons in hauling iron in and about appellant's works. Whether he had been in the habit of using the particular wagon in question does not clearly appear. The fair inference from the evidence,

however, is that the several workmen in appellant's shops did not use the same wagon on different occasions. There were a number of the wagons, and we gather from the evidence that they respectively used whatever wagon was the most convenient when desired.

The language used in the instruction implies that counsel for appellee understood there was evidence tending to prove that he had used or seen others use the wagon in question, as the result of which he had obtained knowledge of the alleged defects and unsafe condition referred to in the instruction. There was also evidence tending to prove that the defects of which complaint is made were open, visible, and easily seen in the operation of the wagon. Now, it is true, as contended by his counsel, that appellee was employed to assist and not to inspect. It was no part of his duty to keep the wagons in repair or to see that they were kept in repair. The rule is that, as to appliances with which the employe works, the law requires him to know such defects as he ought to see by the exercise of diligence in his employment, and it does not require him to know or ascertain the defects in connection with which he is not obliged to labor.

In this case, however, under the evidence and the instructions, the jury was authorized to infer that appellee had, within three weeks prior to the accident, in the discharge of his duties, in assisting in the operation of the wagon, obtained knowledge of the alleged defects therein. In view of such knowledge, under the facts and circumstances disclosed by the evidence, in the absence of notice of such defects to appellant, appellee had no right to indulge in the presumption that the wagon had been repaired; but when he became aware of its unsafe condition, as indicated in the instruction (and justified by

inference, at least, from the evidence), he was chargeable with notice of such defects, and in the subsequent use thereof by himself, or by others in proximity to him, it was his duty to exercise care in proportion to the danger likely to be encountered.

What we have said in the original opinion, and also herein, is only intended to apply to the facts in this case. There is not so much difference between the views of counsel and our own as to the general rules of law which govern in such cases, but we do not agree in their application to the facts in hand. *City of Lafayette* v. *Ashby*, 34 N. E. Rep. 238.

We adhere to the conclusion that the instruction was erroneous and prejudicial, and, therefore, the petition for rehearing is overruled.

Lotz, J.—I think the petition should be granted.

Filed June 24, 1893.