Decker *v.* Fessler.

---

## DECKER *v.* FESSLER.

[No. 17,939. Filed September 30, 1896.]

GUARDIAN AND WARD.—*Sale by Guardian of Ward's Real Estate, Under Order of Court.*—A purchaser of lands at a guardian's sale under an order of the court which appointed him, such court having general jurisdiction to appoint guardians, who pays for the land, relying in good faith on such order will be protected in the title so acquired, if the guardian applies properly the proceeds of such sale, although the court was without jurisdiction to make the particular appointment.

SAME.—*Exchange of Ward's Lands for Other Lands.—Statute Construed.*—Under section 2528 R. S. 1881 (2692 Burns' R. S. 1864), which provides that whenever a better investment of the value of a ward's real estate can be made, the proper court may, on the application of the guardian, order the same or a part thereof to be sold, the court may direct an exchange of the lands of the ward for other lands.

SAME.—*Appointment of Guardian for Minor Female Whose Husband is Also a Minor.—Statute Construed.*—Section 2526, R. S. 1881 (2600, Burns' R. S. 1894), which provides that the marriage of a female ward to a person of full age shall operate as a legal discharge

Decker *v.* Fessler.

of the guardianship is no limitation on the power of the court to appoint a guardian of the estate of a minor female whose husband is also a minor.

From the Madison Superior Court. *Affirmed.*

*J. C. Shuman* and *M. E. Forkner,* for appellant.

*Walker & Foster,* for appellee.

HOWARD, J.—The complaint filed by the appellant in this case was in two paragraphs, the first being for partition of real estate, and the second for the recovery of rents and profits alleged to be due the appellant. The appellee answered in five paragraphs, the first being a general denial, and the others special pleas, claiming title to the land in appellee. He also filed a cross-complaint, showing his source of title, and asking that the same be quieted in him. Demurrers were overruled to the special answers and to the cross-complaint; after which appellant replied in two paragraphs, to the first of which, a special plea, the court sustained a demurrer. Issue was then joined on the general denial to the complaint and to the cross-complaint; and a trial being had, there was judgment against appellant on her complaint and for appellee on his cross-complaint. The rulings on demurrer are assigned as error.

The facts shown by the pleadings and necessary to be considered are: That in 1882 the appellant was the owner of a one-third interest in the lands described in her complaint, and the appellee the owner of the remaining two-thirds; that the appellant was then under twenty-one years of age, and was married, her husband being also a minor; that she was a resident of Madison county, and the Madison Circuit Court appointed one Benjamin M. Zion her guardian,

and, upon the petition of such guardian, ordered him to sell his ward's interest in said lands; that her said interest was duly appraised, an additional bond given, the lands sold at private sale to the appellee, the sale confirmed by the court, and a deed in fee-simple ordered, executed and delivered; that under such sale and deed the appellee went into possession of said lands, and has occupied them ever since, claiming to be the sole owner and making lasting and valuable improvements thereon; that said guardian, under the order and direction of the court, invested the proceeds of such sale in other lands then owned by the appellee, taking a warranty deed therefor from appellee and wife in the name of the appellant; that the appellant at once went into possession of said lands so conveyed to her, and has remained in possession thereof ever since, and now occupies the same under and by virtue of the deed so made to her; that the transaction so approved by the court was in reality an exchange of real estate between appellant and appellee, but the appellant has not offered to return to appellee the land so procured from him, or to make any accounting to him for the money paid by him to her said guardian, and by such guardian invested for her in the lands now held and occupied by her; that during the times of all the aforesaid transactions by the guardian of appellant under direction of the court, she and her husband were both minors.

One of the questions to be decided is, whether the court had jurisdiction to appoint a guardian for appellant while she was a minor and intermarried with a person who was also a minor.

The court making the appointment was a court of superior jurisdiction, having authority to appoint guardians and to order the sale of real estate of minors.

Section 2673. Burns' R. S. 1894 (2512, R. S. 1881), provides that: "The court having probate jurisdiction in each county, in term time, or the clerk thereof in vacation, shall appoint guardians of minors resident in such county, or having estate therein." One of the duties of the guardian as defined by section 2685, Burns' R. S. 1894 (2521, R. S. 1881), is, "To manage the estate for the best interests of his ward;" another is, "To account for and pay over to the proper person all of the estate of said ward." And in the next section it is provided that "The proper court may, on application of a guardian, * * * order and decree any change to be made in the investment of the estate of any ward, that may, to such court, seem advantageous to such estate." In section 2692, Burns' R. S. 1894 (2528, R. S. 1881), it is further provided, as to real estate, that whenever a better investment of the value thereof can be made, the proper court may, on the application of the guardian, order the same, or a part thereof, to be sold. And it has been decided that, under this last provision, the court may direct an exchange of the lands of the ward for other lands. *Nesbit* v. *Miller*, 125 Ind. 106.

The general jurisdiction of the court in the premises is therefore without question. But in *Dequindre* v. *Williams*, 31 Ind. 444, in which case the only authority in relation to guardians was derived from a statute creating a "court of probate," with "power to hear and determine all matters in relation to the settlement of decedent's estates," it was held that, where a guardian, who has received his appointment from a court of superior jurisdiction, having authority to make such appointments, and jurisdiction of guardians' petitions to sell lands, but without jurisdiction to make the particular appointment, sells lands of his ward, under an order of such court, to one who pur-

chases and pays for such land, relying in good faith on such order, such purchaser will be protected in the title so acquired, if the guardian applies the proceeds properly.

The proceeds were applied properly in the case. at bar, being, by order of the court, invested in other lands in the name of the ward; so that even if the court were "without jurisdiction to make the particular appointment" of guardian, still the appellee, as purchaser at the guardian's sale, relying in good faith on the order of the court, ought to be protected in the title so acquired.   All the equities are in favor of the appellee.

Moreover, we do not think that the appointment was unauthorized.   The statute, as above cited, provides that the court "shall appoint guardians of minors resident in such county, or having estate there-in."   This is an absolute grant of jurisdiction to appoint guardians for all minors.   The only limitation made upon the power thus given is found in section 2690, Burns' R. S. 1894 (2526, R. S. 1881), which provides that, "The marriage of any female ward to a person of full age shall operate as a legal discharge of the guardianship; and the guardian shall be authorized to account to the wife, with the assent of the husband."   This certainly is no limitation on the power of the court to appoint a guardian for appellant.   She was not married "to a person of full age."   Indeed, it has been expressly held that the marriage of a minor female ward to a person who is also under age does not discharge her guardianship.   The guardian can make no settlement with her, and the guardianship must continue until either she or her husband is twenty one years old.   *State* v. *Joest,* 46 Ind. 235.   The fact, too, that the statute declares that marriage to a man of full age shall operate as a discharge of the

guardianship, necessarily implies that in case the husband is not of full age the guardianship shall not be discharged. Otherwise the statute would read: The marriage of any female ward shall operate as a legal discharge of the guardianship; and the guardian shall be authorized to account to the wife, with the assent of the husband. This the legislature did not say, for the very good reason that in case the husband were himself a minor he could give no such assent; ,the estate could not thus be placed in the hands of minors, who, in law, are presumed to be incapable of managing their own estate.

What we have said relates, of course, not to the persons, but to the estates of minors. "Guardianship of the person," as well said by Chief Justice O'Brien, in *Montoya de Antonio* v. *Miller* (N. M.), 21 L. R. A. 699, 34 Pac. 40, "is absolutely inconsistent with the conjugal rights of husband and wife." But, as the learned chief justice continues, the release from legal guardianship of one's person does not imply the duty of the guardian to surrender, or of the married ward to demand, any property of hers intrusted to him by the law during her minority.

The judgment is affirmed.