BATTLEDAY'S GUARDIANSHIP *v.* HIESTAND AND
HEISTAND ET AL.

[No. 26,572.  Filed May 22, 1936.]

*Emmett M. La Rue* and *Charles M. Sands,* for appellant.

*Hiestand & Hiestand,* for appellees.

FANSLER, J.—This is an appeal from an interlocutory order requiring the guardian of Ellen Battleday to elect on behalf of his ward that she take under the law of the State of Indiana and not under the will of her deceased husband.

The guardian was appointed for Mrs. Battleday under section 8-301, Burns' Ann. St. 1933, section 3472, Baldwin's 1934, Acts 1911, ch. 218, §1, p. 533, which provides for the appointment of a guardian for a person "incapable of managing his estate or business affairs because of old age, infirmity, improvidence, or being a spendthrift." Section 4 of the act provides that: "The same duties are required of, and the same powers granted to, guardians of any person appointed under this act as are required of and granted to guardians of minors and the insane, so far as the same may be applicable." At the time this law was enacted there was in force section 6-2335, Burns' Ann. St. 1933, section 3344, Baldwin's 1934, Acts 1907, ch. 48, §4, p. 73, which pro-

vides that: "If, at the time of the probate of any such will, such surviving husband or wife shall be insane, or if any such surviving husband or wife shall become insane within the year in which such election may be made and without making such election, it shall be the duty of the guardian of such insane husband or wife to file a petition in the circuit court of the county where such will is probated, praying for the advice of the court, to determine whether he, as such guardian, shall, on behalf of his ward, take under such will or renounce the provisions of the same and take under the laws of descent of the State of Indiana. Such petition shall be filed within one (1) year after such will is admitted to probate in this state. Upon such petition being filed, the circuit court shall hear evidence and determine whether it is for the best interests of such insane husband or wife to take under said will or under said laws of descent, and such court shall enter an order and judgment accordingly." It is provided that the guardian shall, within ten days after the order is made, file an election on behalf of his ward.

The question here presented is whether the guardian of a surviving wife, appointed to manage her estate because of her incapacity occasioned by "old age, infirmity, improvidence, or being a spendthrift," under section 8-301 et seq., Burns' Ann. St. 1933, section 3472 et seq., Baldwin's 1934, is required to file a petition in the circuit court for advice, and whether the court has power to advise and require such a guardian to elect whether his ward shall take under the law rather than under the will of a deceased husband.

The statute providing for election by guardians provides only for an election in cases of an insane husband or wife, and it is urged that it does not apply to guardians appointed under the Old Age and Infirmity statute. The latter, however, provides that the same duties

are required of, and the same powers granted to, guardians appointed thereunder as are required of and granted to guardians of minors and insane persons, so far as the same may be applicable.

It has always been the policy of the state to protect the interest of surviving widows, and to insure them at their election a certain proportion of the estate of a deceased husband, notwithstanding a provision in his will making some other or different provision, or no provision at all, for the widow. No reason is seen for a legislative policy any less tender in its solicitude in respect to widows who are aged and enfeebled than for those who are in sound mental and physical health, or for those who are insane and under guardianship, and we would hesitate to attribute to the legislature an intention to work such a discrimination.

The statute providing for the appointment of a guardian for aged and infirm persons was enacted after the statute providing for the election by guardians of insane persons. No reason for a distinction between the two classes of wards is seen. The procedure provided for in the election statute is as practical in one case as in the other. No test of applicability is furnished under section 4 of the later statute, which defines the powers and duties of guardians thereunder; but, when the unquestioned policy of the state in protecting a widow against being cut off in the will of her husband is considered, and it is considered that the statute providing for election by a guardian is not intended as a limitation upon that policy, but merely as providing a method by which the widow's rights are protected, and that there can be no reason for the protection of the rights of an insane widow that does not equally apply to a widow incompetent by reason of old age and infirmity, there is no great difficulty in concluding that the statute is applicable, and that the powers and duties of a guar-

dian of an insane person therein provided were intended to apply to guardians for aged and infirm persons.

It is said in *Heavenridge et al.* v. *Nelson* (1877), 56 Ind. 90, that an election made by the guardian of a surviving widow was a nullity, since the guardian had no power or authority to make it. There was no order of court authorizing the guardian to make the election. The case seems to have been decided upon authority of *Pinkerton, Admr.* v. *Sargent, Exr.* (1869), 102 Mass. 568, 570, another case in which there seems to have been no order of court authorizing the guardian to·elect, where it is said that: "This privilege of waiver is a purely personal right, and its exercise rests in her personal discretion alone. It is not a question of mere pecuniary advantage. The widow's knowledge of the family arrangement, the wishes of her husband, equitable considerations known and appreciated only by her, may all have weight and influence in determining her election. It is a privilege which cannot be regarded as a portion of her estate." But the privilege of choosing between the provision made by the will and that made by the law arises out of the statute, the purpose of which is the protection of widows. It is consistent to leave the choice to the widow, if she is competent to choose, and it is true that the privilege was designed for her protection and not for the benefit of her estate or her heirs. But it is inconsistent with the unquestioned purpose of the statute·to deny its benefits to a widow who is incompetent to exercise the right to personally choose between the provision of the will and the provision of the law. It seems well·settled that, in the absence of express statutory authority, the guardian of an incompetent cannot make an election without the support of an order of court, but that such an election may be made by a guardian under the direction of a court having equity jurisdiction, and jurisdiction over the

person or estate of the incompetent. *Re Estate of Andrews* (1892), 92 Mich. 449, 52 N. W. 743, 17 L. R. A. 296; *Ambrose* v. *Rugg, Admx. et al.* (1931), 123 Ohio St. 433, 175 N. E. 691, 74 A. L. R. 449, and note. Under the statute here involved old age or infirmity alone is not sufficient to warrant the appointment of a guardian. It must be such as to render the person "incapable of managing his estate or business affairs." *Kutzner* v. *Meyers* (1915), 182 Ind. 669, 672, 108 N. E. 115, 116; *Harvey et al.* v. *Rodger* (1924), 84 Ind. App. 409, 143 N. E. 8. It was said in *Kutzner* v. *Meyers, supra,* that: "It has been always the policy of the state to protect those who, by reason of youth or incapacity, were incapable of managing their estates by placing their property in the hands of guardians or conservators. There is no reason apparent to the court why the same protection should not be extended to persons in their second childhood as is given to infants and persons of unsound mind or habitual drunkards."

In other jurisdictions where, by statute, a widow has the privilege of electing between the provision of a will and the provision made for her by law, courts of equity have without statutory authority exercised the power of electing for incompetent widows, and, though the question has not been passed upon in this state, our courts having probate jurisdiction undoubtedly have this common-law power. The statute respecting election by the guardians of insane widows must be treated therefore not as creating a new power in the courts, but as merely providing a procedure by which the election is made. The procedure is as appropriate to cases of incompetency because of old age and infirmity as to cases of incompetency because of insanity, and the duties and powers of guardians thereunder must be treated as applicable to the latter cases.

Appellees have filed a motion to dismiss the appeal

upon the ground that the appellant guardian has no interest in the action which will support an appeal. But he appeals not in his individual capacity, but in his representative capacity. The order appealed from requires him as guardian to renounce for his ward the provision made for her in her husband's last will. The errors assigned question the sufficiency of the evidence. There may have been an abuse of discretion in making the order. It is true that the evidence is not brought into the record by a bill of exceptions. But this requires an affirmance, so far as that assigned error is concerned, but not a dismissal, since the guardian had a right to appeal in the interest of his ward, and present that question. The second ground of motion to dismiss is that the guardian has a personal interest in the result. But if a disinterested guardian might appeal for the purpose of protecting the interest of his ward, so also may a guardian who has a personal interest. The motion to dismiss is overruled.

There was no error in requiring the guardian to file his petition for advice on the question of election to take under the law, nor in denying the guardian's petition to withdraw this petition for advice.

The evidence is not brought into the record by a bill of exceptions, and no question is presented by the assignment, questioning the sufficiency of the evidence. The record shows that evidence was heard. It will be presumed that it was sufficient.

It is contended that the regular judge of the Newton circuit court was without jurisdiction to make the order in question for the reason that a change of judge had been taken and a special judge had jurisdiction. The change was taken in the proceeding arising upon the petition of the ward to have the guardian discharged. This issue was tried by the special

judge, and there was a finding against the ward, before the order here in question was made by the regular judge. The change of judge did not affect the trust. It affected only the question presented by the petition to have the guardian discharged. The administration of the guardianship remains within the jurisdiction of the regular judge.

Judgment affirmed.